# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | |
|---|---|
| VINCENT N. CANNADY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-cv-00372-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Vincent Cannady seeks review of the Administrative Law Judge's decision denying his application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

## I. Background

### A. Cannady's Medical History

Cannady is a 48 year old man who requests disability benefits due to mental and physical impairments.

Since 2009, Cannady has received consistent treatment for sleep apnea and post-traumatic stress disorder (PTSD). He reported that he suffered through three traumatic events that caused his PTSD and sleep problems. [Tr. 656]. He stated in 2009 that he was often able to sleep for only three to four hours per night and often abused alcohol, drinking approximately a fifth of liquor every four days. *Id.*

Cannady has also received ongoing treatment for problems with his lower extremities. Cannady has seen numerous doctors for his hammertoes, right ankle pain and swelling, and right foot and leg pain. He has consistently complained of instability and trouble ambulating his leg and ankle. Multiple doctors have treated him for pain and prescribed various assistive devices, including orthotics and a cane which he currently uses. Cannady also suffers from ongoing back pain. His reported level of pain and functional abilities have varied since 2009, but he has consistently complained of significant problems.

On December 14, 2010, Cannady was evaluated by Dr. Melinda Peterson, his treating physician. [Tr. 683]. Cannady reported ankle and knee pain, hammertoes, back pain, and chronic bronchitis. [Tr. 664]. Dr. Peterson concluded that Cannady was impaired in his ability to perform activities requiring repetitive bending, pushing or pulling, carrying items on his back or items weighing more than fifteen pounds, and running, sitting, standing, or walking for prolonged periods of time. [Tr. 682].

On August 4, 2011, Dr. Geoffrey Sutton completed a psychiatric review technique. [Tr. 893-904]. He concluded that Cannady suffered from PTSD, had a moderate degree of limitation maintaining social functioning, and mild limitation in activities of daily living and difficulties in maintaining concentration, persistence, or pace. *Id.* He opined that Cannady was moderately limited in his ability to interact appropriately with the general public and the ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* He concluded that Cannady had the

ability to interact with others on a limited contact basis and adapt to moderately complex low hazard work settings.

On August 18, 2012, Cannady was evaluated by Dr. Dennis Velez. [Tr. 1285-91]. Dr. Velez noted that Cannady limped and could not walk around the room without using a cane. *Id.* He opined that Cannady would not have limitations with respect to standing or sitting, providing that he used his cane. *Id.* He stated that Cannady could lift up to 100 pounds continuously, sit and stand for four hours at one time, and walk two hours at one time with cane and ankle support. *Id.* He noted that Cannady could frequently stoop, kneel, and crawl, but only occasionally balance and crouch. *Id.*

On August 20, 2012, Dr. Robert Forsyth performed a psychological consultative examination. [Tr. 1276-79]. He opined that Cannady is able to understand and remember simple and moderately complex instructions. *Id.* He stated that Cannady would do best in an employment setting involving limited contact with the general public. *Id.* He further opined that Cannady was mildly affected in his ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting. *Id.*

### B. ALJ Decision

The ALJ denied Cannady's request for disability benefits, concluding that Cannady had the Residual Functional Capacity (RFC) to engage in substantial gainful activity. The ALJ concluded that despite Cannady's severe impairments of obesity, degenerative disc disease of the cervical spine and thoracic spine, deformity of the right ankle status post fusion with hammertoes, mild osteoarthritis and claw toe deformities of

the left foot, PTSD, major depression, and a history of bipolar disorder, he retained the following RFC:

> [T]o perform light work as defined in 20 CRF 404.1567(b) in that the claimant can lift 50 pounds occasionally and 25 pounds frequently; can sit up to 4 hours at a time for up to 6 hours of an 8-hour work-day; can stand up to 4 hours at a time with the use of a cane for distances of 100 feet or more, for up to 4 hours of an 8-hour day. In addition, the claimant should never operate foot controls with the right foot; never climb stairs, ramps, ladders or scaffolds; and can only occasionally balance and crouch. This individual cannot walk a block at a reasonable pace on rough or uneven surfaces. Further, assume this individual can remember simple and moderately complex tasks and sustain concentration and persistence in such tasks. This individual would do best in an employment setting where he has limited contact with the general public.

[Tr. 17].

In determining Cannady's RFC, the ALJ accorded significant weight to the opinions of Dr. Velez and Dr. Sutton. She found that Dr. Forsyth's opinion was entitled to some weight. The ALJ accorded Dr. Peterson's opinion little weight because Dr. Peterson did not identify "the nature or extent of the claimant's limitations." [Tr. 20]. Based on the RFC and interrogatories answered by a vocational expert, the ALJ concluded that Cannady could maintain substantial gainful employment as a marker, assembler of electrical accessories, and polisher. [Tr. 23-24].

**II.     Standard**

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some

4

evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

**III. Discussion**

Cannady argues that the ALJ erred in (1) failing to include Cannady's sleep apnea as a severe impairment, (2) failing to properly consider whether Cannady met Listing 1.02, (3) failing to properly consider the medical opinions, and (4) providing inconsistent limitations in the RFC. The Court concludes that the ALJ properly weighed the evidence of the record and though her opinion contains minor errors, those errors are harmless and substantial evidence supports her overall determination.

**A. Evaluation of Cannady's Sleep Apnea**

Cannady contends that he suffers from significant sleep apnea, which should have been included as a "severe impairment" at step two of the ALJ's analysis. A claimant need only meet a "de minimus" standard to prove that an impairment constitutes a severe impairment. An impairment is severe unless it is so minor that it would only be expected to create a "slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Bowen v. Yuckert*, 482 U.S. 137, n.12 (1987).

Cannady has received ongoing treatment for sleep apnea since 2009. At various times throughout his records he stated that he was getting only three or four hours of sleep a night due to sleep apnea and PTSD problems. While his sleep apnea may have

5

risen to the level of a severe impairment, however, Cannady fails to demonstrate how the ALJ's failure to list it as a severe impairment constitutes harmful error. Cannady does not argue that his sleep apnea constitutes a disabling condition or that it prevents him from working. The record in fact indicates that it is not a disabling condition, as after he began receiving treatment with a CPAP machine, his sleep apnea improved significantly.

Furthermore, the ALJ discussed Cannady's PTSD at length in the RFC discussion. Cannady's records suggest that many of his sleep problems were caused by his PTSD rather than sleep apnea, and that sleep apnea independently may not have constituted a significant impairment. The ALJ included Cannady's PTSD as a severe impairment, but concluded that it caused no more than mild to moderate limitations on his ability to function and interact with people on a daily basis. Nothing in Cannady's medical records suggests that the inclusion of sleep apnea as a severe impairment would impact the determination that Cannady is able to maintain substantial gainful activity.

### B. Cannady's Qualification Under Listing 1.02

Cannady argues that the ALJ did not properly consider whether his impairments met Listing 1.02. If Cannady's impairments meet or exceed the elements of Listing 1.02, he must be considered disabled and is entitled to receive benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

Listing 1.02 sets out the qualifications for disability caused by "major dysfunction of a joint (due to any cause)":

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other

6

Case 4:14-cv-00372-NKL   Document 11   Filed 01/12/15   Page 6 of 13

> abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s): With
>
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. The "inability to ambulate effectively" is defined as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1).

The ALJ briefly discussed whether Cannady met the qualifications of Listing 1.02 at step three of the evaluation process. She further described Cannady's ability to ambulate in the RFC discussion. The ALJ noted that the physician opinions in the record all indicated that Cannady was capable of at least "sedentary contract-style work." She also gave significant weight to Dr. Velez's opinion as it was based on Cannady's demonstrated mobility at the evaluative appointment. Dr. Velez stated that Cannady could sit, stand, walk, operate foot controls, and engage in postural maneuvers as set out in the RFC. The limitations observed by Dr. Velez and the RFC are not sufficiently debilitating to meet the requirements of the listing.

Moreover, the ALJ's conclusion that Cannady does not meet the listing is consistent with Cannady's own function report regarding his ability to attend school and

7

complete activities of daily living. The record also indicates that though many of Cannady's foot and leg problems began in 1988 and 2006, he was able to sustain substantial gainful activity through 2009. The record contains evidence of only minor degeneration of Cannady's condition since 2009. His ability to work with his impairment contradicts his claim that he is unable to function independently. Cannady's ambulatory limitations do not rise to the level of impairment required by Listing 1.02, which requires very serious interference with the claimant's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1).

Furthermore, though Cannady uses a cane to maneuver, the use of a cane does not "limit[] the functioning of *both* upper extremities" as required by the listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1) (emphasis added). A claimant must meet all of the criteria for a listing in order to be considered disabled. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As both upper extremities are not limited by Cannady's use of a cane, Cannady does not meet the listing criteria and cannot be considered disabled based on the listing. *See Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

### C. Evaluation of Medical Opinions

Cannady contends that the ALJ erred when assigning weight to the medical opinions of the record. The ALJ found that the opinions of Dr. Velez, a one-time examining consultative examiner, and Dr. Sutton, a non-examining medical consultant, were entitled to significant weight. She afforded some weight to the opinion of Dr.

8

Forsyth, a one-time examining medical consultant. She gave little weight to the opinion of Cannady's treating physician, Dr. Peterson.

The ALJ stated that little weight was given to Dr. Peterson's opinion because it did not identify the "extent or nature of the claimant's limitations." [Tr. 20]. Cannady argues that the ALJ should have contacted Dr. Peterson to "seek additional clarification" about the reasons for Dr. Peterson's conclusions. 20 C.F.R. § 404.1512(e)(1).

In general, a treating physician's opinion is entitled to deference. "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." SSR 96-2p. Even when a treating source's opinion is not entitled to controlling weight, it "should not ordinarily be disregarded and is entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The ALJ here gave Dr. Peterson's opinion appropriate consideration and incorporated many of her findings into the RFC.

Dr. Peterson opined that Cannady's ankle, left knee, and back conditions would impair his ability to perform occupational tasks or daily activities that require running, sitting, standing, or walking for prolonged periods of time; and bending, pushing or pulling, transporting items on his back, or carrying items weighing more than fifteen pounds. [Tr. 682-83]. The ALJ specifically noted that she "concurs there is some impairment in these areas, as described in the residual functional capacity," and incorporated many of Dr. Peterson's conclusions into the RFC. [Tr. 20]. The RFC stated that Cannady "can lift 50 pounds occasionally and 25 pounds frequently; can stand up to 4 hours at a time with the use of a cane for distances of 100 feet or more, for up to 4

hours of an 8-hour day. In addition, the claimant should never operate foot controls with the right foot; never climb stairs, ramps, ladders or scaffolds; and can only occasionally balance and crouch." [Tr. 17]. These limitations reflect many of Dr. Peterson's opinions.[1] Moreover, Dr. Peterson's conclusions are generally consistent with the other medical opinions of the record, making it unnecessary for the ALJ to re-contact Dr. Peterson to clarify her conclusions and any minor deviations from the other opinions in the record.

Cannady argues that the ALJ's assignment of weight to the medical opinions is not consistent with the ALJ's adoption of the medical opinions in the RFC. For example, the ALJ stated that she accorded Dr. Velez's opinion significant weight, but instead of adopting Dr. Velez's opinion that Cannady could lift up to 100 pounds continuously, included an RFC limitation of lifting only 50 pounds occasionally and 25 pounds frequently. However, the ALJ is not required to adopt all limitations proposed by a

---

[1] Where the RFC strays from Dr. Peterson's opinion, most notably with respect to Cannady's lifting restrictions, one the following situations presumably occurred: First, the ALJ may have concluded that Dr. Peterson's opinion is inconsistent with the other evidence in the record, as Cannady reported to Dr. Velez in 2012 that he was capable of lifting and carrying 20 pounds repetitively and 50 pounds occasionally. In light of Cannady's concession, substantial evidence exists in the record to justify the ALJ's possible conclusion that Cannady was capable of lifting 50 pounds occasionally and 25 pounds consistently. Second, as discussed in subsection D below, the ALJ may have adopted Dr. Peterson's opinion but improperly conveyed it in the RFC. The RFC states that Cannady was capable of "light" work "in that the claimant can lift 50 pounds occasionally and 25 pounds frequently." "Light" work is defined in the regulations, however, as requiring lifting only 20 pounds occasionally and 10 pounds frequently. It is possible that the ALJ's opinion contains a drafting error and that she intended to impose the more stringent limitation. However, the vocational expert opined that Cannady was capable of maintaining three jobs requiring only "light" work as defined by the regulation's limitations. As such, the inconsistency in the RFC does not necessitate remanding the case.

doctor, even if that doctor's opinion is accorded significant weight. Furthermore, the ALJ concluded that Cannady was more limited than Dr. Velez concluded. As such, remanding the decision for the ALJ to accord more weight to Dr. Velez's opinion would not change the outcome of the case.

Cannady points to numerous other claimed inconsistencies between the weight accorded to the doctors' opinions and the RFC determination. The weight accorded to each opinion, however, is generally consistent with the ALJ's conclusions in the RFC. The ALJ's discussion makes clear that the weight assigned to each opinion corresponded with the level of analysis performed by the doctor in the opinion and the consistency of the opinion with the remainder of the record. The limitations set forth in the RFC are consistent with the evidence of the record and most of the limitations are corroborated by multiple medical opinions. Substantial evidence supports the weight assigned to the doctors' opinions.

### D. RFC Determination

Cannady argues that the RFC determination is internally inconsistent and that the ALJ failed to include all of his limitations in the RFC.

The ALJ concluded that Cannady had the RFC "to perform light work as defined in 20 CFR 404.1567(b) in that the claimant can lift 50 pounds occasionally and 25 pounds frequently." [Tr. 17]. As Cannady notes, this statement is inconsistent with the definition of "light work" in 20 C.F.R. 404.1567, which states that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Undoubtedly, the RFC is internally inconsistent. However,

11

the inconsistency does not constitute harmful error. Error must be prejudicial to justify remanding the ALJ's opinion. *Lacroix v. Barnhart,* 465 F.3d 881, 886 (8th Cir. 2006). *C.f. Hepp v. Astrue,* 511 F.3d 798, 806 (8th Cir. 2008) ("[A]n arguable deficiency in opinion-writing technique does not require [a court] to set aside an administrative finding when the deficiency had no bearing on the outcome."). The three jobs which the vocational expert stated that Cannady could perform (marker, electrical assembler, and polisher), all require only light or sedentary strength as defined by the regulation. [Tr. 248-49]. The vocational expert opined that there were jobs that Cannady could perform under the most restrictive interpretation of his RFC limitation. As such, it is unnecessary to remand the ALJ's decision to clarify whether Cannady is limited to performing light or medium work.

Outside of this inconsistency, the ALJ's opinion is thorough and well-reasoned. The ALJ provided clear explanations of the medical evidence and the opinions she relied on in formulating the RFC. She carefully weighed the medical opinions and adopted limitations consistent with the record.

Furthermore, the ALJ explained the proposed limitations she disregarded. The ALJ specifically noted that she did not include limitations on Cannady's ability to interact with supervisors and co-workers because "[t]here is little indication of complaints about supervisors and co-workers, but consistent reports of problems dealing with the public." [Tr. 22]. Cannady's contention that the RFC should have included a work hazard limitation is not supported by the record. The only indication that Cannady is limited in his ability to work around hazards is Dr. Sutton's opinion that Cannady was

12

capable of adapting to "moderately complex low hazard work settings." [Tr. 892]. This single statement is insufficient to conclude that the ALJ's determination is not supported by substantial evidence.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 12, 2015
Jefferson City, Missouri